397 F.Supp. 256 (1975)
Brenda SMITH, Plaintiff,
v.
ANCHOR BUILDING CORPORATION, Defendant.
No. 73 C 469(3).
United States District Court, E. D. Missouri, E. D.
June 3, 1975.
Samuel H. Liberman, Liberman, Baron & Toldsteon, St. Louis, Mo., for plaintiff.
Larry B. Luber and John P. Emde, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., for defendant.

MEMORANDUM
WANGELIN, District Judge.
This action is before the Court for a decision on the merits following the trial to the Court sitting without a jury.
This action was brought by the plaintiff, Brenda Smith, against the defendant, a corporation, for alleged violations of 42 U.S.C. §§ 1982 and 3604 for racial discrimination in the rental of housing. Plaintiff seeks actual damages, punitive damages and attorney's fees.
The Court being fully apprised of the premises hereby makes the following findings of fact and conclusions of law.

Findings of Fact
1. Plaintiff is a Negro female, and defendant is a Missouri corporation.
2. The Park Ridge Apartments are located in St. Louis County, Missouri, and the complex consists of several apartment buildings with attendant recreational facilities of swimming pools, tennis courts and basketball courts.
3. Plaintiff resided with her parents in early 1973. At that time she decided that she would move into an apartment of her own later in the year. The plaintiff visited the Park Ridge Apartments, inspected the display apartment and conversed with persons concerning the prospective rental of an apartment. Defendant's agents were advised by plaintiff that she did not desire an apartment immediately, but that she would like occupancy in June of 1973. At that time the plaintiff was advised that it was unnecessary for her to complete an application due to the substantial time interval between that date and her desired date of occupancy.
4. The evidence clearly shows that the Park Ridge Apartments has a very high rate of occupancy, and that the average time between removal of one tenant and occupancy by another is approximately two days due to the management's goal of a high occupancy rate.
5. On March 4, 1973, the plaintiff submitted a written application for an apartment, which was admitted into evidence as Defendant's Exhibit B, and stated that she desired a one bedroom, second floor apartment available around the 1st of June, 1973. After plaintiff completed the application, she made other visits and/or telephone calls to the *257 Apartments concerning her anticipated occupancy.
6. At an uncertain time prior to Friday, June 22, 1973, the plaintiff contacted the apartment rental office and was advised that her apartment was not yet available. The plaintiff then contacted Miss Virginia Polens of the Monsanto Company Housing Office, plaintiff's employer, and requested her to assist plaintiff in obtaining an apartment at Park Ridge Apartments.
7. The Park Ridge Apartments are managed by a resident manager. During the time period in question, a resident Manager worked six days a week with Friday as her day off. The defendant employed a relief Manager whose duty was to work a different day at different apartment sites owned by the defendant to replace the resident managers on those managers' day off. The defendant had employed a new relief Manager on Friday, June 22, 1973. That day was the first day on which the relief Manager had worked at the Park Ridge Apartments.
8. On June 22, 1973, Virginia Polens, of the Monsanto Company Housing Office, at the request of the plaintiff, telephoned Park Ridge Apartments to inquire as to the availability of an apartment. Miss Polens testified she was advised that an apartment was available but that she did not request that the apartment be held for the plaintiff, nor did she testify that at any time she discussed with any representative of defendant, plaintiff, Brenda Smith; nor her application; nor the availability of an apartment for plaintiff. Miss Polens merely inquired as to whether or not an apartment was available. Miss Polens then told the plaintiff that she, Miss Polens, had been advised that an apartment was available.
9. After working hours on the evening of June 22, 1973, plaintiff, Brenda Smith, went to the Park Ridge Apartments and inquired as to whether or not an apartment was available. Upon arrival, the plaintiff apparently talked with the relief Manager and was told that her apartment was not available.
10. Plaintiff, Brenda Smith, then contacted an organization known as St. Louis Freedom of Residence, and talked to its Executive Director, Mrs. Hedy Epstein. On Monday, June 25, 1973, Mrs. Epstein sent a white law student, Mr. Terrence Irion, to the Park Ridge Apartments for the purpose of making an application for an apartment. Mr. Irion made an application, wrote a fifty dollar ($50.00) personal check for a deposit, and was told that he could have apartment 1363-G. Mr. Irion left the apartment complex, and immediately stopped payment on that check, and at no time had any intention of renting an apartment.
11. The defendant intended to lease apartment 1349-O to the plaintiff. This apartment was available for occupancy by plaintiff, Brenda Smith, on June 28, 1973. On that date, the defendant called the plaintiff to advise her that the apartment was available and requested her to come in and make the security deposit. Plaintiff then advised the defendant that she, Brenda Smith, could not come in until after work and the defendant made special arrangements for the Manager to remain subsequent to normal closing hours. The plaintiff advised the defendant that she would come to the apartment to make the deposit, but never appeared. The apartment was held by defendant until at least July 1, 1973, at which time defendant called plaintiff to again request her to make the security deposit. Plaintiff was not home, and plaintiff's mother said she knew nothing about the apartment rental, except that she would give plaintiff the message. The defendant had no further communications from Brenda Smith until her attorney called defendant's attorney on a date which is not in evidence. On July 12, 1973, plaintiff filed this action against the defendant.
12. Regarding the availability of apartments for rent in the Park Ridge *258 Apartments complex, the only evidence in the record indicates that:
Apartment 1363-G was vacated on June 4, 1973, and was left by the previous tenant in extremely poor condition. Prior to the departure of the tenant in 1363-G, the defendant's office had received communications from the Federal Bureau of Investigation, the St. Louis Police Department Intelligence Unit, and the Internal Revenue Service, requesting the defendant to advise each of the foregoing agencies in the event that apartment 1363-G was vacated. The defendant notified the foreging agencies upon removal of the tenant, and, at the request of the agencies, placed a "hold" on the apartment which was so maintained until further notification to defendant by the agencies. At some time the morning of June 25, 1973, the resident Manager of Park Ridge Apartments, Debbie Downing, received a telephone call from the main corporate office of the defendant notifying her that the hold had been released, and that therefore the apartment was now available for renting as soon as it could be cleaned up. This is the apartment which defendant offered to rent to Terrence Irion as previously stated.
On June 21, 1973, the tenant of apartment No. 1379-B committed suicide. Although the apartment could be termed unoccupied, subsequent to the tenant's death, it was not available for renting because the personal effects of the tenant had not been removed from the apartment. Thus, apartment 1379-B was not available for occupancy at any time relevant to this lawsuit.
Apartment 1349-O was a one bedroom, second floor apartment as had been requested by plaintiff, Brenda Smith. This apartment was under lease, and the defendant was notified on June 19, 1973, that the tenant was vacating and would vacate on June 30, 1973. Prior to the scheduled final date of occupancy, the prior tenant vacated the premises on June 25, 1973. The defendant's maintenance man inspected the apartment and made it ready for a new tenant on June 26, 1973. On June 28, 1973, the defendant telephoned the plaintiff to advise her that apartment 1349-O was available for Brenda Smith to rent.
13. The record produced at trial fails to show any availability of any other apartments in the Park Ridge complex at any time relevant to this lawsuit.
14. Prior to June 25, 1973, plaintiff, Brenda Smith, determined that she did not desire to reside in the Park Ridge Apartments. Thereafter, she rented an apartment in a complex called Sunswept at a rate of $160 per month, some $30 in excess of the rental at the Park Ridge Apartments. Plaintiff conceded by her own testimony that the apartment which she has rented has features which are not available at the Park Ridge Apartments, so that the apartment which she actually rented commands a rental in excess of the rentals at Park Ridge Apartments. No evidence was offered by the plaintiff to indicate that she had any difficulty in finding an apartment for immediate occupancy after she voluntarily concluded that she did not desire to accept the apartment that was offered by the defendant. The plaintiff, Brenda Smith, has failed to show any damages relating to the rental of any apartment whatsoever.
15. There is no evidence presented in the record to indicate that the defendant had ever discriminated at any time against persons on the basis of race.
16. During direct examination, Hedy Epstein attempted to indicate to the Court that Mr. Ronald Johnson, a Negro male, had been denied an apartment at the Park Ridge Apartments. Mrs. Epstein related on cross examination that Mr. Johnson had made application for an apartment at Park Ridge Apartments on approximately June 19, 1973, with the request that an apartment be available *259 for him on July 1, 1973. The Court notes that Mrs. Epstein testified that when Mr. Johnson was called by the defendant on July 1, 1973, and told that his apartment was available, Mr. Johnson then advised the defendant that he had changed jobs and that he no longer desired an apartment.
17. The record also indicates that Mrs. Epstein, on behalf of the Freedom of Residence Organization, attempted to interest Monsanto Company in joining as a party to the present lawsuit. This, along with the general demeanor of all of members of plaintiff's race were residents of Park Ridge Apartments. It is plaintiff's witnesses, leads the Court to the conclusion that the plaintiff's evidence is simply not credible concerning any discrimination on the part of the defendant.
18. None of the evidence adduced by plaintiff, Brenda Smith, concerned itself with the question of whether or not any noted by the Court that plaintiff's witness, Mrs. Epstein, a self-styled expert concerning housing practices in the St. Louis area, testified that at no time had she made any effort to determine whether or not Negroes were indeed tenants of the Park Ridge Apartments.
19. The defendant's evidence, which was totally uncontradicted and which the Court finds to be more than credible, indicates that during the time period relevant to this lawsuit, the resident Manager, Debbie Downing, was personally familiar with thirty-five to forty black families residing in the apartment complex. Other of the defense witnesses, whose testimony the Court finds to be credible, also testified that approximately twenty percent (20%) of the residents of Park Ridge Apartments are members of the Negro race.
20. Considering the total evidentiary record produced, and weighing the credibility of the various witnesses as the trier of fact, the Court finds in favor of the defendant and against the plaintiff, on the grounds that the plaintiff has simply failed to carry the necessary burden of proof.

Conclusions of Law
This Court has jurisdiction of this section pursuant to 28 U.S.C. § 1343, and 42 U.S.C. § 3612.
In a racial discrimination action such as the one presently at bar, the burden of proof is clearly upon the plaintiff. Jones v. Sciacia, 297 F.Supp. 165 (E.D.Mo., 1969), aff'd, 422 F.2d 393 (8th Cir., 1970).
As previously stated in the findings of fact, the record clearly indicates that the plaintiff has failed to carry the necessary burden of proof for recovery.
Plaintiff's witnesses' testimony was simply not credible, and in most instances was thoroughly impeached upon cross examination.
The Court is aware that it is standard practice in racial discrimination in housing cases to use "checkers" to verify that acts of discrimination have taken place. It is apparent that in the present lawsuit, the attitude of the "checkers" was one of champerty, rather than attempting to verify that alleged acts of discrimination had taken place against plaintiff, Brenda Smith. The evidentiary record at trial indicates that no acts of racial discrimination were directed against the plaintiff, even though plaintiff's witnesses attempted to create an inference of such acts through their own deceptive actions.
The Court can think of few things more demeaning than to be denied a place of residence simply due to one's race, and this Court stands committed to enforcing the various provisions of the United States Statutes which are aimed at eliminating racial prejudice in all forms. However, the plaintiff in the present lawsuit does not come within the protective ambit of those statutes since she has failed to produce the minimal evidentiary record to invoke their protection. If plaintiff's case had been any weaker, it would have failed to survive a *260 defendant's motion for a directed verdict at the close of plaintiff's evidence. The defendant's evidence clearly established that plaintiff has failed to carry her burden of proof.
Therefore, judgment shall be entered against plaintiff, and for the defendant.